UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KERRY STONE,<br><br>   Plaintiff,<br><br>   v.<br><br>WALGREEN CO., *et al.*,<br><br>   Defendants. | Case No. 13-cv-2838-W (DHB)<br><br>**ORDER DENYING DEFENDANTS' MOTION TO DISMISS [DOC. 4]** |

On September 27, 2013, Plaintiff Kerry Stone commenced this action against Defendants Walgreen Co. ("Walgreens") and Option Care Enterprises Inc. d/b/a Walgreens Infusion Services, LLC ("Option Care") in the San Diego Superior Court. Thereafter, Defendants timely removed the action to this Court. Defendants now move to dismiss Plaintiff's complaint in its entirety. Plaintiff opposes.

The Court decides the matter on the papers submitted and without oral argument. See Civ. L.R. 7.1(d.1). For the following reasons, the Court **DENIES** Defendants' motion to dismiss.

//

## I. BACKGROUND

On December 10, 2009, Plaintiff was hired as the Regional Nutrition Specialist for Option Care. (Compl. ¶ 6.) At the time of her hiring, Plaintiff was promised exclusive territories in Arizona, California, Nevada, and New Mexico. (Id. ¶ 7.) In reality, Plaintiff was only given limited California territories in Carlsbad and Santa Fe Springs, and was given the duties of a Branch Dietician rather than a Regional Nutrition Specialist. (Id. ¶ 8.)

On or about February 7, 2012, Plaintiff contacted the California Division of Occupational Safety and Health ("CALOSHA") and reported "hazardous conditions" present at Walgreens Infusion Services in Carlsbad, CA ("Walgreens Carlsbad"). (Compl. ¶ 9.) Specifically, she complained that: (1) "the building smells and it is unhealthy"; (2) "there are leaking ceilings on both levels of the building"; and (3) "the parking lot is not kept up, and there are rocks everywhere." (Id.)

Two days later, on February 9, 2012, senior management announced that Option Care had purchased Crescent Healthcare. (Compl. ¶ 10.) Plaintiff alleges that although present Option Care's staff were "supposed to be interviewed for positions for Crescent, Plaintiff [] was never interviewed." (Id.)

On or about February 27, 2012, Plaintiff received orders from a doctor regarding "enteral feeding for a patient." (Compl. ¶ 12.) After several interactions with the patient, Plaintiff eventually prepared an order that included her assessment indicating that the patient had dysphagia—the inability to swallow—as a diagnosis "because it was true and it was necessary for the patient to qualify for Medicare coverage." (Id. ¶ 19.) Plaintiff faxed the order, and then doctor signed it. (Id.) Plaintiff later discovered that a Crescent Healthcare dietician "conducted a nutritional assessment on March 30, 2012, because she was no longer allowed to care for this patient." (Id. ¶ 20.)

On April 5, 2012, Plaintiff received a letter from CALOSHA, dated March 30, 2012, telling her that it "investigated her items in her complaint [regarding Walgreens Carlsbad] and although it did not find violations regarding those items, it did cite the

employer for violation of Title 8 of the California Code of Regulations on the date of inspection." (Compl. ¶ 11.) Neither party provides any of the details from the citation that CALOSHA issued.

Around the same time, Plaintiff was notified by Defendants' Loss Prevention Department that she was being investigated for fraud. (Compl. ¶ 21.) Shortly thereafter, on or about April 16, 2012, Plaintiff was directed to "come into the office," where she was told that she was "terminated for falsifying records." (Id. ¶ 23.) Plaintiff alleges that she "believes that the reasons given for her termination are pretextual and the actual reason was retaliation for reporting the defendants to CALOSHA[.]" (Id. ¶ 24.) Plaintiff maintains that she "did not commit any fraudulent act by adding the word 'dysphagia' as the patient did in fact have dysphagia and the word was added PRIOR to the time the doctor signed the order." (Id. (emphasis in original).)

On September 27, 2013, Plaintiff commenced this action, asserting claims for: (1) violation of California Labor Code § 1102.5 *et seq.*; and (2) wrongful termination in violation of public policy. Defendants now move to dismiss Plaintiff's complaint under Rules 12(b)(1) and 12(b)(6). Plaintiff opposes.

## II.     LEGAL STANDARD[1]

Under Federal Rule of Civil Procedure 12(b)(1), a party may move to dismiss based on the court's lack of subject matter jurisdiction. See Fed. R. Civ. P. 12(b)(1). In such a motion, the plaintiff bears the burden of establishing the court's subject matter jurisdiction. "A federal court is presumed to lack jurisdiction in a particular case unless the contrary affirmatively appears." Stock West, Inc. v. Confederated Tribes, 873 F.2d 1221, 1225 (9th Cir. 1989) (citation omitted). A Rule 12(b)(1) jurisdictional attack may be either facial or factual. White v. Lee, 227 F.3d 1214, 1242 (9th Cir. 2000).

---

[1] Defendants merely append Rule 12(b)(6) to their motion to dismiss without actually applying it anywhere in their motion. Consequently, the Court **DENIES** Defendants' motion insofar as it being brought under Rule 12(b)(6). But the Court will discuss the motion in the context of Rule 12(b)(1).

In a facial attack, the complaint is challenged as failing to establish federal jurisdiction, even assuming that all of the allegations are true and construing the complaint in light most favorable to the plaintiff. See Safe Air for Everyone v. Meyer, 373 F.3d 1035, 1039 (9th Cir. 2004). Thus, a motion to dismiss for lack of subject matter jurisdiction will be granted if the complaint on its face fails to allege sufficient facts to establish jurisdiction. See Savage v. Glendale Union High Sch., 343 F.3d 1036, 1039 n.2 (9th Cir. 2003).

"By contrast, in a factual attack, the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction." Safe Air for Everyone, 373 F.3d at 1039. "[T]he district court is not restricted to the face of the pleadings, but may review any evidence, such as affidavits and testimony, to resolve factual disputes concerning the existence of jurisdiction." McCarthy v. United States, 850 F.2d 558, 560 (9th Cir. 1988). "Once the moving party has converted the motion to dismiss into a factual motion by presenting affidavits or other evidence properly brought before the court, the party opposing the motion must furnish affidavits or other evidence necessary to satisfy its burden of establishing subject matter jurisdiction." Savage, 343 F.3d at 1039 n.2.

## III.  DISCUSSION[2]

Defendants' sole argument for dismissal is that Plaintiff failed to allege that she exhausted her administrative remedies under California Labor Code § 98.7, which Defendants contend is a prerequisite to bringing her § 1102.5 and wrongful-termination claims. As an extension of this argument, Defendants assert that Plaintiff's claims must be dismissed with prejudice because the six-month limitation period provided in § 98.7

---

[2] Under Rule 201 of the Federal Rules of Evidence, a court may take judicial notice of a fact that is not "subject to a reasonable dispute" because "it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(a). Defendants request that the Court take judicial notice of a case ordered de-published for persuasive value. (Doc. 9.) Because the case provides no value in the Court's determination, the Court **DENIES AS MOOT** Defendants' request.

lapsed. Plaintiff responds that exhaustion is not required. The Court agrees with Plaintiff.

### A. Violation of California Labor Code § 1102.5

Effective January 1, 2014, California Labor Code § 244(a) unequivocally clarified that administrative exhaustion is not required as a prerequisite for a plaintiff seeking to enforce his or her rights under *any* section of the Labor Code that does not expressly require it: "An individual is not required to exhaust administrative remedies or procedures in order to bring a civil action under any provision of this code, unless that section under which the action is brought expressly requires exhaustion of an administrative remedy." Also effective on January 1, 2014, § 98.7(g) similarly clarified that "[i]n the enforcement of this section, there is no requirement that an individual exhaust administrative remedies or procedures." Consequently, only the express language of a particular section may require the exhaustion of administrative remedies.

Turning to the language of the pertinent California Labor Code sections, both § 1102.5(b) and § 98.7(a) are silent regarding any requirement for the exhaustion of administrative remedies. Section 1102.5(b) provides, in pertinent part:

> An employer . . . shall not retaliate against an employee for disclosing information . . . to a government or law enforcement agency . . . if the employee has reasonable cause to believe that the information discloses a violation of state or federal statute, or a violation of or noncompliance with a local, state, or federal rule or regulation, regardless of whether disclosing the information is part of the employee's job duties.

And § 98.7(a) states: "Any person who believes that he or she has been discharged or otherwise discriminated against in violation of any law under the jurisdiction of the Labor Commissioner may file a complaint with the division within six months after the occurrence of the violation[.]"

The parties each give lengthy arguments summarizing the current split of authority that exists as to whether § 98.7 does in fact obligate a plaintiff to exhaust administrative remedies before the Labor Commissioner. (Pl.'s Opp'n 3:16–4:9;

5:12–6:8; Defs.' Mot. 4:17–7:17.) However, based on the newly effective §§ 244(a) and 98.7(g), these arguments are now moot, and the Court finds that § 98.7 does not require Plaintiff to exhaust any administrative remedies before the Labor Commissioner in order to assert her § 1102.5 claim.

However, there is a remaining issue that needs to be resolved. Because the parties filed their motions prior to the clarification of those statutes, the Court must determine whether they retroactively apply in their current form to this case. In general, statutes only operate prospectively, and "a statute's retroactivity is, in the first instance, a policy determination for the Legislature and one to which courts defer absent 'some constitutional objection' to retroactivity." McClung v. Emp't Dev. Dep't, 34 Cal. 4th 467, 475 (2004) (quoting Myers v. Philip Morris Companies, Inc., 28 Cal. 4th 828, 840 (2002)). "A statute will not apply retroactively where it creates new rights or new liabilities." Gonzalez v. City of McFarland, No. 13-CV-00086, 2014 WL 294581, at *2 (E.D. Cal. Jan. 24, 2014) (citing McClung, 34 Cal. 4th at 475).

Several courts in California have addressed this issue and concluded that § 244(a) can be applied retroactively. See, e.g., Howard v. Contra Costa Cnty., No. 13-CV-03626, 2014 WL 824218, at *17 (N.D. Cal. Feb. 28, 2014); Melgar v. CSK Auto, Inc., No. C-13-03769, 2014 WL 546915, at *4 (N.D. Cal. Feb. 7, 2014); Gonzalez, 2014 WL 294581, at *2. Based on the legislative history of the bill that enacted § 244, those courts agree that the alterations made to the statute clarified existing law, and did not amend or change it, thereby concluding that retroactive application of the law is appropriate. See id. This Court agrees with the other courts' sound reasoning and incorporates it here. See id. Consequently, the Court finds that § 244 does not impose new liabilities or create new rights, and thus applies to this case. See McClung, 34 Cal. 4th at 475.

Accordingly, the Court **DENIES** Defendants' motion to dismiss as to Plaintiff's § 1102.5 claim.

//

B.  **Wrongful Termination in Violation of Public Policy**

The California Supreme Court has held that "when an employer's discharge of an employee violates fundamental principles of public policy, the discharged employee may maintain a tort action and recover damages traditionally available in such actions." Tameny v. Atl. Richfield Co., 27 Cal. 3d 167, 170 (1980). In order to bring a wrongful discharge claim rooted in public policy, the public policy must be supported by either constitutional or statutory provisions. Stevenson v. Superior Court, 260 Cal. App. 2d 24, 66 (1997). Section 1102.5 has been held to reflect a broad public policy interest in encouraging workplace whistle blowers to report illegal employer conduct without fear of retaliation. Collier v. Superior Court, 228 Cal. App. 3d 1117 (1991). In addition, "California courts have long held that § 6310 embodies a public policy against retaliatory firings, and that violation of [that statute] could serve as the basis for a claim of wrongful termination in violation of public policy." Freund v. Nycomed Amersham, 347 F.3d 752, 758 (9th Cir. 2003) (citing Hentzel v. Singer Co., 138 Cal. App. 3d 290, 298 (1982)). Lastly, § 232.5 has also been held to be a valid as a cause of action for wrongful termination in violation of public policy. Luke v. Collotype Labels USA, Inc., 159 Cal. App. 4th 1463, 1472 (2008) (holding the National Labor Relations Act does not preempt § 232.5 public policy claims when the claim involves health and safety laws).

Defendants present the same argument for this claim as it did for the first claim, that Plaintiff must exhaust her administrative remedies under § 98.7 before asserting a claim under California Labor Code §§ 1102.5, 6310, and 232.5. For the same reasons discussed above, Defendants are wrong; Plaintiff is not required to exhaust any administrative remedies before asserting her claim.

In addition to disputing the exhaustion requirement, Plaintiff also argues that she is not asserting a claim under those statutes, but rather is asserting a common-law tort action based on violations of public policy; she even explicitly titled her claim, "Wrongful Termination in Violation of Public Policy."  (Pl.'s Opp'n 6:15–7:25.)

Allegations related to §§1102.5, 6310, and 232.5 merely provide the public policies embodied in those sections that were violated. (Compl. ¶¶ 36–41.) Again, the Court agrees with Plaintiff.

The law is clear that a plaintiff may pursue a claim for wrongful termination in violation of public policy under common law. Defendants do not dispute this in their reply brief. Rather, they completely ignore this argument, instead focusing solely on exhaustion requirements. (Defs.' Reply 6:2–17.) In fact, no where in the reply brief do Defendants even mention "common law." Furthermore, even insofar as Plaintiff asserts the claim under the common law, Defendants fail to demonstrate that Plaintiff must exhaust administrative remedies before invoking §§ 1102.5, 6310, or 232.5. Based on this Court's own research, none of those sections expressly require exhaustion. See Cal. Labor Code §§ 1102.5, 6310, & 232.5. Given that none of the aforementioned sections require the exhaustion of administrative remedies, § 244 permits Plaintiff to pursue claims under those sections—whether under the common law or statute—without first exhausting administrative remedies.

Accordingly, the Court **DENIES** Defendants' motion to dismiss as to the claim for wrongful termination in violation of public policy.

## IV. CONCLUSION & ORDER

In light of the foregoing, the Court **DENIES** Defendants' motion to dismiss. (Doc. 4.)

**IT IS SO ORDERED.**

**DATE: March 26, 2014**

_____
**HON. THOMAS J. WHELAN**
United States District Court
Southern District of California